BoatU.S.

# SALVAGE ARBITRATION PLAN

BoatU.S.

BOAT OWNERS ASSOCIATION OF THE UNITED STATES

# Boat Owners Association of The United States
# Salvage Arbitration Plan

## TABLE OF CONTENTS

**Overview**
- Plan Benefits . . . . 1
- Costs and Time Involved . . . . 2

**Before Arbitration** . . . . 2
- Duty of Utmost Good Faith & Full Disclosure . . . . 3
- Salvage Billing Practices . . . . 3
- Percentage Billings . . . . 3
- Independent or Subcontractors . . . . 4
- Standard Form Salvage Contracts . . . . 4
- Payment of Salvor's Bill . . . . 5

**Arbitration Process and Procedure** . . . . 5
- Request to Convene a Panel . . . . 6
- Arbitration Fees and Expenses . . . . 6
- Administrator Duties . . . . 7
- Presentation of the Salvage Case . . . . 8

**Arbitration Decision** . . . . 10
- General Duties of Panel . . . . 12
- Arbitration Guiding Principals . . . . 12

**Arbitrators** . . . . 13
- Listing Critera . . . . 14
- Code of Ethics . . . . 14

**Plan Management** . . . . 15

**Miscellaneous Terms of Agreement** . . . . 15

© 2003
Boat Owners Association of The United States
880 South Pickett Street, Alexandria, VA 22304
Office of Salvage Arbitration 703-461-2856
Fax: 703-461-4674

# I. Boat Owners Association of The United States Salvage Arbitration Plan—Overview

Inherent in every business transaction is the risk of a dispute. Boat Owners Association of The United States (the Association) sponsors this Salvage Arbitration Plan as a low cost, time efficient, equitable dispute resolution system for the recreational boating community. It is structured in a manner that strives to provide the parties an objective, unbiased legally supportable outcome.

When a dispute arises and negotiations fail, either party may request an arbitration panel be convened. Upon mutual agreement to use this Plan, the parties are legally bound by the decision of the arbitration panel. Each party presents their case in writing. No in-person testimony is used. Each party has the opportunity to submit a written rebuttal to the case presented by the opposing side. The arbitration panel reviews the cases and decides a fair and reasonable settlement. The parties are sent a copy of the Award that includes the settlement amount and an explanation of the decision.

Each party to the dispute selects an arbitrator from the list of arbitrators maintained by the Association. These arbitrators are marine professionals with experience in the salvage of recreational boats. Parties to the dispute are free to choose from the Admiralty Attorney List or the Marine Professionals List when they select an arbitrator. The two arbitrators then must select the Arbitration Panel Chairman from the Attorney List, assuring proper application of the law.

## A. Plan Benefits

Participants in this Plan are benefited by:

- an arbitration panel comprised of marine professionals who apply their knowledge and understanding of recreational boat salvage
- an Admiralty Attorney as the panel Chairman assuring proper application of law
- a speedy resolution of the dispute
- sharply reduced cost, in comparison to court proceedings as well as other available arbitration plans
- an Award supported by the fully reasoned, written opinion

## B Costs and Time Involved

The arbitration fees are split equally between the two parties. The maximum cost per party is $1,575.00 . There are no travel or hearing costs, or additional legal expense associated with this plan. Fees are collected at the end of the procedure (no pre-arbitration set up costs).

The following chart outlines the time involved in resolving the dispute and notes the amount of time allowed for the various stages of the process. This plan provides for a quick resolution with the average procedure concluded within 84 days.

| | |
|---|---|
| Day 1 | Agreement to Arbitrate submitted |
| Day 14 | Deadline for arbitrator selection |
| Day 42 | Deadline for submitting case presentation |
| Day 56 | Deadline for submitting rebuttal |
| Day 84 | Award decided by panel |
| Immediately upon receipt | Award decision distributed to all parties |



# II. Before Arbitration

## A. Duty to Utmost Good Faith and Full Disclosure

1. All parties shall deal fairly, honestly and with utmost good faith in the handling of salvage operations, salvage contracts, and negotiations seeking a just and reasonable payment for salvage services.

2. Wherever information must be disclosed such as the conditions under which the salvage operation was performed, the value of the Yacht, insurance coverage or the basis of the salvage billing, all information shall be completely and fully disclosed.

## B. Salvage Billing Practices

1. Upon completion of the job and delivery to a safe port, Salvor shall present to the Underwriter's Agent and/or the salved vessel's Owner a billing for services rendered. The bill must be on the basis of a flat contract price, or time and equipment in accordance with published rates, or based on a percentage of after-salvage, pre-repair fair market value of the vessel or property saved, whichever was agreed to at the time the salvage took place. Salvor should include with the billing any background information regarding the salvage operation that supports the amount of the bill presented.

2. If requested by the Salvor, or in the event of any disagreement over the reasonableness of the Salvor's billing, the Underwriter (or an uninsured Owner, if applicable) shall disclose, without prejudice, the pre-casualty current market value and insured value of the salved vessel and its equipment as well as the believed post-casualty, pre-repair fair market value "as is" (after salvage but before repairs). Any supporting information or opinions obtained from a marine survey of the yacht or repair facility estimates or invoices shall also be disclosed as soon as practicable. Any Coast Guard or Marine Patrol accident reports shall also be provided to Salvor if requested.

## C. Percentage Billings

1. In the event Salvor pursues a claim based on a percentage of the salved vessel's post casualty value, the billing shall include an explanation of the basis of the claimed percentage, the post casualty, pre-repair value, and the way in which yacht's valuation was determined.

2. For the purposes of calculating percentage billing of the post casualty value, the amount shall be based upon the post-casualty, pre-repair value of the salved vessel. Pre-repair valuation may be calculated by subtracting the reasonable cost of restoring the salved vessel to its pre-casualty condition, according to accepted marine repair practices, from the pre-casualty fair market value. It should exclude the costs of salvage and towing to a suitable repair yard, but take into account any damages caused or contributed to by the Salvor during the recovery operation.

3. The joint survey for the purpose of arriving at the post-casualty, pre-repair value of the salved vessel, while not required, is encouraged wherever a dispute arises as to valuation.

## D. Independent or Subcontractors

1. Salvor shall disclose any independent or subcontractors hired which were involved in the salvage operation and whose services are included as part of the bill presented.

2. Any compensation owing to any subcontractor retained by Salvor shall be the sole responsibility of the Salvor with no obligation of the Owner or Underwriter to pay this subcontractor directly. Salvor hold harmless and agrees to indemnify the Owner and Underwriter from any claim by such subcontractor for payment.



## E. Standard Form Salvage Contracts

1. This Arbitration Plan is available for any salvage dispute as mutually agreed between the parties, regardless of what contract form is used by the Salvor. The Boat Owners Association of The United States Standard Yacht Salvage Agreement is available for use in any marine salvage operation, such as high dry grounding or stranding with imminent risk of loss of life or property or damage to a protected marine environment, but is not required.

2. The Salvor shall present his contract or agreement to the Owner or master of the salved vessel and obtain an agreement to proceed with the salvage prior to commencing any recovery effort, wherever possible. In the event of clear danger to life or property (e.g. perilous at-sea conditions or immediate and substantial risk of life and property), Salvor may engage in stabilizing efforts prior to presenting the agreement. Once the situation is stabilized, the agreement should be produced and finalized upon before any further salvage or towing operations are undertaken.

## F. Payment of Salvor's Bill

1. After good faith review of the billing, the salved vessel's Underwriter (or the Owner, if uninsured) shall promptly pay the Salvor the agreed upon amount, but in any event (absent an extension of time granted by the Salvor) no later than fifteen (15) days from the date the yacht is delivered afloat or ashore and the bill is delivered to the Owner or Underwriter as mutually agreed. In the event of disagreement over the bill, and an inability to resolve any disagreement, arbitration should be promptly requested.

2. The Underwriter shall deliver to the Salvor a copy of the declarations page of the subject insurance policy and a Letter of Undertaking agreeing to pay, without prejudice, an amount up to one and one-half (1.5) times the presented bill, subject to policy limits, with full disclosure of any reservations or rights for policy coverage defenses which might affect Underwriter's payment of the bill.

3. In the absence of any reservation of rights for policy coverage defenses, the Salvor shall accept Underwriter's Letter of Undertaking as security for any maritime lien and in lieu of any arrest or attachment of the Yacht. The Letter of Undertaking shall serve as bond for payment of any salvage claim award, including but not limited to interests and costs.

4. In the event the Yacht is not insured or Underwriter's Letter of Undertaking contains a policy reservation of rights not withdrawn on or before the thirtieth (30th) day following delivery of the Yacht, Salvor may resort to all legal remedies to assure collection of fees from the Yacht and/or its Owner or may agree with Owner to accept owner's surety bond and/or convene arbitration under this Plan.

# III. Arbitration Process and Procedure

## A. Request to Convene a Panel

1. In the event the parties to any billing dispute cannot reach an agreement on the reasonable fees for services rendered, and when the parties have agreed by stipulation or otherwise to arbitrate under the Association's Arbitration Plan, the parties may request that Arbitration be convened. A request to convene Arbitration may be made at any time but should generally be requested only after good faith negotiations between the parties have been exhausted.

2. Notice of the request for arbitration shall be sent in writing to all interested parties and to the Boat Owners Association of The United States Office of Salvage Arbitration, 880 South Pickett Street, Alexandria, VA 22304. Upon receipt of the request for arbitration, the Administrator will send the "Agreement to Arbitrate" form to both parties. Submission of the form constitutes an agreement that this arbitration is final and binding on all parties and in lieu of any legal or other proceedings. If either party fails to submit the "Agreement to Arbitrate" form within five (5) days, the Administrator will advise both parties to pursue appropriate legal remedies. The parties agree that the Award issued as a result of their case may be published by Boat Owners Association of The United States and/or its correspondents.



3. All parties to Arbitration must select an arbitrator from the current list of the Association's Arbitrators (or agree to a sole Arbitrator selected from the Admiralty Attorney List) within **fourteen (14)** days of the Administrator's notice of a request to convene a Panel. If either or both parties fail to timely select an Arbitrator, and an "Agreement to Arbitrate" form has been filed by both parties, the Administrator shall select one at random for such party from the current list of Arbitrators and shall so advise each party in writing. In such an event, the panel shall be three (3) members and not a sole arbitrator. If no "Agreement to Arbitrate" has been submitted, the parties will be advised to pursue appropriate legal remedies.

## B. Arbitration Fees and Expenses

All fees and expenses of the Arbitration Panel and the Arbitration Administrator shall be equally between the parties to arbitration. The maximum amount any party to this arbitration process would pay is $1,575.00. The fee schedule is as follows:

**1. Each Arbitrator shall be paid an hourly fee of $100 for a maximum of seven (7) hours time, plus expenses.**

**2. The Arbitration Panel Chairman shall be paid an hourly fee of $125 for a maximum of twelve (12) hours time, plus expenses.**

3. The Arbitration Administrator shall be paid a flat fee of $250

4. Arbitrator's direct expenses shall be limited to photocopying at 25 cents per page, mailing charges, telephone or fax charges. Travel is not necessary to render a decision. Other expenses are subject to review by the Administrator. Payment of the arbitrators' direct expenses are made by the Administrator and are not the responsibility of the parties to arbitration.

5. In the event the parties agree to a sole Arbitrator to resolve the dispute, the sole Arbitrator will be selected from the Association's current arbitrators list of Admiralty Attorneys. This Arbitrator shall be entitled to the same rate and expenses as that of a Chairman with a maximum of **fifteen (15)** hours time and the Administrator fee shall be reduced to $125.

## C. Administrator Duties

1. The Administrator shall be an employee designated by the Consumer Affairs Office of Boat Owners Association of The United States and shall have no involvement or interest in the salvage claim. The Administrator is responsible for clerical functions and has no input into the decision making process of the Arbitration Plan.

2. The Administrator shall maintain a current listing of all available arbitrators; a file on all Plan Awards; and any correspondence or documents received in the course of Arbitration business to be retained for a period of not less than 3 years.

3. The Arbitrator will make available to anyone requesting it a list of active arbitrators and copies of this Plan.

4. Upon receipt of a request to convene a panel, the Administrator shall promptly notify the parties of the request, send the "Agreement to Arbitrate" form to the parties, and request selection of an arbitrator to sit on the panel. (If no "Agreement to Arbitrate" is received, the Administrator will advise both parties to pursue appropriate legal remedies.) If either or both parties fail to timely select an Arbitrator, and an "Agreement to Arbitrate" has been filed, the Administrator shall select one at random for such party from the current list of Arbitrators and shall so advise each party in writing.

5. After selection is complete, the Administrator will next notify each Arbitrator in writing of their selection and instruct them to choose an Arbitration Panel Chairman from the Association's current arbitrators list of Admiralty Attorneys. The Administrator shall promptly notify the chairman of such selection and distribute to each member of the panel a copy of the Plan, arbitration deliberation guidelines and any other documents useful to their work.



6. The Panel members shall submit a signed statement acknowledging to what extent, if any, they have a conflict which would prevent them from fully and fairly evaluating the case. This statement will also require the arbitrator to agree to remain impartial and fair and honest throughout the arbitration.

7. The Administrator will notify the parties of the panel selection and monitor the panel's business to ensure a timely decision is rendered.

8. The Administrator shall receive and distribute as appropriate all correspondence and documents during the course of Arbitration. **All communication between the parties to arbitration and the panel shall be directed through the Administrator once the panel is convened.**

9. The Administrator shall provide all parties with a copy of the Award and any assessed Arbitration fees and expenses.

10. The Administrator shall oversee timely payment of the Award and any billings and shall be empowered with Power of Attorney and confession of Judgment in any court of competent jurisdiction to seek collection of the Award or billings due hereunder. A failure of either party to promptly pay an Award or assessment shall result in that party's forfeiture of any benefits or protection of the Plan. The Administrator is empowered to instruct the Underwriter or (Owner if uninsured) to offset any administrative assessment against the Salvor in the Award payment and have such assessed fee included in the Underwriter's assessment payment.

11. The parties to the Arbitration may communicate with each other throughout the Arbitration process. If the parties reach a settlement on their own while the Arbitration is in progress, the parties will pay the Arbitration Panel members and the Administrator for their services at the stated hourly rate, up to the maximum allowed.

## D. Presentation of the Salvage Case

1. Each party to Arbitration shall prepare in writing and deliver to the Administrator within fourteen (14) days of submission of the Agreement to Arbitrate, five (5) copies of a presentation of its position in regard to the reasonable amount believed due and owing for the salvage services performed. Upon receipt of the case presentation from both parties, the Administrator will promptly distribute copies to the Arbitration Panel and the other party to Arbitration. Rebuttal information, if any, must be delivered to the Administrator within fourteen (14) days of receipt of the opposing party's case presentation. A party may petition the Chairman (through communication with the Administrator only) for an extension of any time deadline herein and such extension shall be granted only for good cause shown by the petitioning party.

2. The Case Presentation shall include, where appropriate, the following:

a. A summary of the salvage operation including, but not limited to, the following:

(1.) location of the casualty and prevailing weather and sea conditions throughout the recovery operation;

(2.) degree of risk to persons and equipment;

(3.) the extent of damage to the salved vessel believed caused in the incident or as believed caused by the salvage operation;

(4.) degree to which the salvage operation mitigated or saved reasonably anticipated further damage to the salved vessel;

(5.) time requirement, expenses and degree of success of the salvor in mitigating or preventing damage to the marine environment;



(6.) Prevailing prices for comparable salvage recovery operations and awards, and hourly salvage rates in that region;

(7.) Photographs, video tapes and witness statements believed helpful to render a decision on the reasonable compensation for salvage services performed;

b. A copy of any signed Agreement or contract together with a copy of all documents or a summary of oral contractual arrangements between the salved vessel's owner or master and any Salvor and/or Salvor subcontractors involved in the recovery operation;

c. An itemized listing of the Salvor's vessels and their value, personnel and equipment utilized in the recovery operation together with an itemization of time expended and any out of pocket cost incurred for such crew or equipment;

d. The salved vessel's pre-casualty fair market and insured value, post-casualty pre-repair market value, any marine condition/valuation or damage surveys and all repair estimates or invoices;

e. Party's summary conclusions and the believed reasonable fee due and owing for services rendered. **Disclosure of settlement discussion information is deemed improper and is not to be submitted**

3. All case presentations shall be accomplished through the mail. No in-person presentation of the case nor any out of town travel by the Panel members shall be necessary. The Chairman is encouraged to convene a conference call meeting of the Panel before rendering a final decision.

# IV. Arbitration Decision

## A. General Duties of Panel

1. The Arbitration Panel shall promptly review all presented materials. The Chairman may request additional information for clarification from either or both parties. This request, as well as the response, must be in writing and communicated through the Administrator. Copies of the request and response will be distributed to all Panel members and both parties to the arbitration by the Administrator.

2. The Chairman or his/her designee shall issue a written decision and Award within **forty-two (42) days** of receipt of all case presentation materials and/or any supplemental information requested. The Arbitration panel shall weigh all appropriate information provided in a full and fair light and may reject any untimely presentation.

3. Generally a salvage operation is performed on a "No Cure, No Pay" basis, however, the Award should give special compensation for the costs of removal of the wreck and pollution prevention, containment or clean up in the event the saved property is later deem a constructive total loss ("CTL"). A CTL is defined herein as the reasonable repair costs exceeding the lesser of insured value or the fair market value of substantially similar boat. Recovery (salvage and/or towing) expense shall not be considered in a CTL calculation. Due consideration shall be given to a partially successful savings of the yacht, its equipment, stores or cargo. This special compensation shall be payable only if no salvage award is made.



## B. Arbitration Guiding Principles

The Panel shall consider a Guiding Principles for their decision on a reasonable Award the following criteria:

1. salved vessel's post-casualty valuation;

2. weather, seas and other marine conditions immediately prior to, during and following the salvage recovery operations which relate to the danger to the property;

3. degree of risk to persons or property during the recovery effort;

4. skill, experience, promptness and expertise of salvor;

5. time, equipment and expenses expended by salvor in rendering the salvage service; and losses, if any incurred by the salvor;

6. the time, equipment & expenses expended by the salvor to mitigate or prevent environmental damage;

7. measure of success, extent of damage mitigated as a result of or caused by the salvage effort;

8. value, readiness and efficiency of salvor's vessels and equipment;

9. prevailing prices and awards for comparable salvage recovery operations and hourly or per foot salvage rates in that region.

# V. Arbitrators

## A. Listing Criteria

1. Criteria for approved listing shall include a minimum of five (5) years experience in salvage related profession. This includes, but is not limited to, operator/crew of salvage operation, damage appraisal, claims adjusting or Admiralty law practice. The arbitrator must be of highest moral, ethical, personal and business reputation.

2. Listing as one of the Plan's "Approved Arbitrators" shall be by application submitted to the Consumer Affairs office of Boat Owners Association of The United States. This office shall appoint an annual steering committee of at least three members who shall approve or disapprove their inclusion in the listing

## B. Code of Ethics

1. No Arbitrator may serve on a particular case panel who has in any manner participated in the subject salvage recovery operations or its investigation, or who has any financial interest in the Award. It is the responsibility of such Arbitrator or any participant in that Arbitration case to immediately advise the Administrator of any conflict in order that a substitute Arbitrator can be selected. A failure by a party to an Arbitration case to advise of a conflict of interest within ten (10) days of convening the panel shall waive such objection by that party. A failure of the Arbitrator to personally excuse himself/herself from a particular case due to such conflict (independent of any request by a party) may result in permanent dismissal of such Arbitrator form the Approved List and a rejection of any fees or expenses submitted by that Arbitrator in connection with any pending cases.



2. No Arbitrator shall discuss with the party appointing him/her regarding the selection of the Panel Chairman. Once the Panel is complete, all communications between the parties to arbitration shall be through the Administrator. All verbal communication must be confirmed in writing. None of the Arbitrators are to directly communicate with any of the parties to Arbitration.

3. Arbitrators must remain impartial and abide by the principles of honesty and fair dealing.

4. Arbitrators must sign an "Arbitrator's Agreement" for each case on which they serve, affirming their lack of conflict of interest.

5. Boat Owners Association of The United States shall govern all disciplinary matters involving the Approved Arbitrator Listing.

# VI. Plan Management

The Plan shall be managed and directed by the Chairman of Boat Owners Association of The United States through its Consumer Protection Bureau.

# VII. Miscellaneous Terms and Agreement

This Salvage Arbitration Plan is sponsored by Boat Owners Association of The United States for use by mutual agreement of any parties to a recreational boat salvage dispute. The pre-arbitration and arbitration procedures and guidelines outlined in this booklet shall be followed by any participants. Use of this plan is voluntary. As such, participants agree to hold harmless sand indemnify Boat Owners Association of The United States for any loss or damage arising out of this arbitration process from whatever cause including negligence of employees.

Boat Owners Association of The United States

**STANDARD FORM YACHT SALVAGE CONTRACT**

It is hereby agreed this ______ day of ______________, 19 ______, at ________ hours at

______________________ by and between: ______________________
(Location) (Owner or Captain)

for the Yacht named " ______________________ ," which is described as a
(Vessel)

______________________ and insured by: ______________________ and
(yr - manufacturer - length) ("Underwriter")

______________________ , to salvage the yacht under these terms and conditions:
(Salvage Company/Salvor)

1. Salvor agrees to render assistance to and endeavor to save said yacht and its property and deliver her afloat or ashore at ______________________ marina or port as mutually agreed, or to nearest safe port if unspecified herein, as soon as practicable.

2. Salvor shall have the requisite possession and control of the subject yacht and be entitled without expense to the reasonable use of the yacht and its gear in the performance of recovery or salvage operations.

3. Said salvage and any towage services by the Salvor shall terminate upon delivery of said yacht as designated herein. Owner and Underwriter shall be responsible for any storage, towing or other port or marina charges following delivery and for risk of loss thereafter.

   (a) NO CURE/NO PAY (Compensation, including special compensation, to be determined under ARTICLES 13 and 14, SALCON 89, and U.S. Admiralty Law.)

   INITIALS __________/__________
   salvor owner

   (b) NO CURE/NO PAY, AT A FIXED PRICE of $

   INITIALS __________/__________
   salvor owner

   (c) NO CURE/NO PAY at $__________/per hour/per day/per vessel (or in accordance with SALVOR's published rates, initialed and attached hereto).

   INITIALS __________/__________
   salvor owner

   (d) OTHER:

**********

*This Agreement is for use in the rescue of a boat suffering a serious marine peril such as fire, sinking, stranding or high and dry grounding. A copy of this Agreement and any billing should be sent to the Underwriter's Agent as rapidly as possible. The performance of salvage services hereunder are neither recommended nor approved by Boat Owners Association of The United States.*

*@ 2003 — Boat Owners Association of The United States*
*880 South Pickett Street, Alexandria, VA 22304*
*(permission to reprint without alteration is granted)*

**Continued other side**

4. Compensation to Salvor for the services performed hereunder shall be in accordance with a billing and any supportive analysis of the salvage operation to be presented to Owner and Underwriter's agents upon completion of salvage. Billing to be calculated on the basis specified in No. 3. No agreement on price or its reasonableness has been made at the scene unless agreed to in writing.

5. Services hereunder are rendered on a "No Cure, No Pay" basis; however, salvor shall be entitled to a reasonable allowance for prevention or minimization of environmental damage in accordance with Articles 13 & 14 of the 1989 International Convention on Salvage, as well as for clean up or wreck removal in the event the vessel is deemed a constructive total loss. Payment is due promptly upon presentation of Salvor's bill. Interest at the rate of one and one-half (1.5%) percent per month (or the maximum legal rate allowed) shall accrue on any unpaid balance from 30 days after completion of salvage and presentation of a salvage bill, or as determined in accordance with the findings of any Arbitration Award.

6. In the event of any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding local arbitration utilizing individual(s) experienced in maritime and salvage law. The Boat Owners Association of The United States Salvage Arbitration Plan, though not required, is available as a public service through Boat Owners Association of The United States wherever the parties agree to its use. In the event Owner is uninsured for payment of these services, Salvor may, at its election, agree with Owner to use any agreeable arbitration system or to proceed with all available legal remedies to recover sums believed due and owing.

7. It is understood that services performed hereunder are governed by the Admiralty and Maritime Jurisdiction of the Federal Courts and create a maritime lien against the yacht or its posted security. Salvor's lien shall be preserved until payment. Salvor agrees in lieu of arrest or attachment to accept from the yacht's Underwriter, a Letter of Undertaking for an amount equal to one and one-half (1.5) times the presented billing with a copy of the insurance policy and coverage information. If the yacht is uninsured or its Underwriter cannot provide a Letter of Undertaking, Salvor may demand the posting of a Surety Bond with its designated Escrow Agent in an amount equal to 1.5 times the Salvor's bill. Salvor may satisfy collection of fees or charges hereunder by recourse to any security posted and shall be entitled to any costs incurred in collection of payments due hereunder including reasonable attorneys fees subject to the findings of any arbitration.

8. Salvor hereby warrants that it is acting on its own behalf and on behalf of any subcontractors retained by Salvor to perform services in the recovery or delivery of the yacht. Salvor shall be responsible for any such subcontractors' compensation.

9. In the event the Salvor has already rendered salvage services to the described yacht prior to execution of this contract, the provisions of this contract shall apply to such salvage services.

**SIGNED:** ______________________ ______________________

| Salvage Company<br>Print Name & Address: | Owner/Captain or Owner's Agent<br>Print Name & Address: |
|---|---|
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| Phone: (____) ____- ________ | Phone: (____) ____- ________ |
| Fax: (____) ____- ________ | Fax: (____) ____- ________ |