BoatU.S.
BOAT OWNERS ASSOCIATION OF THE UNITED STATES

Washington National Headquarters
880 South Pickett Street
Alexandria, VA 22304
703-823-9550 Fax: 703-461-2847

A FAX COMMUNICATION FROM
BoatU.S. CONSUMER PROTECTION BUREAU
880 S. Pickett St., Alexandria, VA 22304
FAX NUMBER: 541-929-7637
VOICE PHONE: 541-929-7635

DATE: July 23, 2007

TO: Kenneth Chiarello, Esq.
617-720-3489 fax

John K. Fulweiler, Esq.
212-422-5299 fax

FROM: Caroline Ajootian, AVP
Director, Consumer Affairs
CAjootian@BoatUS.com

RE: Salvage Arbitration Case 06-1228
HRM Safe/Sea v One Beacon Insurance (David Pickering, M/V SPRAY)

# OF PAGES, INCLUDING COVER SHEET: 7

,1666

CHRISTIAN D. KEEDY, P.A.
7931 SW 59th Avenue
Miami, FL 33143-5513

Telephone: 305-669-4478
Telefax: 305-667-9980
Email: ckeedy@bellsouth.net

Of Counsel to
Aran Correa & Guarch, P.A.
Board Certified in Admiralty
& Maritime Law

July 23, 2007

Ms. Caroline Ajootian
Manager, BoatU.S. Salvage Arbitration Plan
369 Benton View Drive
Philomath, OR 97370

Tel: 541-929-7635
Fax: 541-929-7637
Sent by Fax
Total Pages SIX

Re: Salvage Arbitration Case 06-1228
HRM d/b/a Safe/Sea v. One Beacon Insurance Group (David Pickering, M/V Spray

Dear Ms. Ajootian:

Enclosed is the majority opinion and a dissenting statement in the case referred to above. The original award by the majority of the panel is being forwarded to you under separate cover by mail, and I asked Mr. Mattioni's office to forward the original of the dissenting statement directly to you by mail also.

Statements of the arbitrators for fees and costs will be provided by each arbiter directly to you in due course.

It was my pleasure to have had an opportunity to be of assistance to Boat US, I remain,

Very truly yours,

Christian D. Keedy, P.A.

CDK/fj
Enclosures
CC: Dante Mattioni
John Koster

In the Matter of the Arbitration

Between

Between HRM D/B/A SAFE/SEA
Petitioner

And

ONE BEACON INSURANCE GROUP (DAVID PICKERING M/V SPRAY)
Respondents

Boat Owners Association of the United States
Salvage Arbitration
C.No 60-1228

Arbitrators: John C. Koster; Dante Mattioni; Christian D. Keedy, Chair

John K. Fulweiler, DeOrchis, Hillenbrand, Wiener & O'Brien, LLP, for the Petitioner, H.R.M, Inc (d/b/a Safe/Sea Marine Rescue & Assistance, petitioner) Keneff M. Chiarello, Clinton & Muzyka, P. C. for respondents, David W. Pickering and M/V Spray

**FINAL AWARD**

This is a salvage case brought before this arbitration panel by agreement of the parties, pursuant to a standard form marine salvage contract entered into on September 23rd, 2006, between David W. Pickering and H.R.M., Inc, which does business as Safe/Sea, concerning the salvage of Mr. Pickering's 1990 36 foot Formula motor vessel Spray. Spray was at that time located at Apponaug Harbor Marina in Warwick, Rhode Island.

HRM at that time was a Rhode Island corporation which provided marine towage and salvage services on a 24 hours basis 365 days a year. It maintained a fleet of six fully equipped salvage vessels, and employed nine Unites States coast guard licensed captains plus numerous support personal for its operations.

At approximately 1600, Captain Andrew Casey, aboard HRM's M/V Safe/Sea Salvor diverted from a prior towing job to respond to the motor vessel Spray's location at Apponaug Harbor Marine. The Safe/Sea Salvor arrived at approximately 1605, and found the Spray partially flooded. HRM advised Mr. Pickering that its work would be undertaken as salvage pursuant to the standard form marine salvage contract, which Mr. Pickering ultimately signed, and that the costs would be based on the percentage on the value of the vessel. HRM deployed two pumps. One was located in the engine room space and the

second was positioned inside vessel's cabin, and proceeded to pump the vessel out. On September 23rd, 2006, at approximately 1745 the M/V Spray was redelivered to its owner, who signed a delivery certificate acknowledging that HRM's services had been carried out to his satisfaction and confirming the redelivery of the M/V Spray.

On October 9th, 2006 HRM invoiced the owner of M/V Spray $11,000 for its salvage services, and it received from the vessels' insurer confirmation that the invoice was received on or about October 12th, 2006. On November 20th, 2006, Vessel's insurer rejected HRM's invoice on the basis that services provided did not give rise to claim for pure salvage. On November 21st, 2006 HRM demanded arbitration in accordance with the salvage contract, and the owner on or about December 11th, 2006, the law firm of Clinton & Muzyka appeared for the owner, and provided HRM with a letter of undertaking in the amount of $16,500.

The vessels post casualty valuation is in dispute. HRM asserts that the vessels value was $61,500 based upon the average sale price for similar vessels. The vessel's owner argues that this value after the flooding damage was only $31,800, based on a pre casualty market value of $56,000 less and an estimated cost to repair the vessel of $24,156.87 from Brewer Yacht Yard. No evidence was provided to the panel as to what the repair charges ultimately were. Based upon the conflicting evidence the panel has concluded that a fair post casualty value of the vessel is $45,000.

Based on information provided to the panel, this salvage was undertaken in good weather, calm water, and within the confines of the marina. There was no unusual danger to either the M/V Spray or salvage vessel as a result of weather conditions. The risk to which persons and property were exposed during the recovery effort was not great.

It appears that the salvor was professional, and provided the skill, experience, promptness, and expertise which would be expected of a professional salvor under the circumstances. The total amount of time taken for this salvage appears to be approximately one hour and forty five minutes during which the salvor used one vessel, two dewatering pumps, and the necessary knowledge, expertise and experience to successfully dewatered the M/V Spray, which would have (without this dewatering) sunk resulting in further damage. The repair estimate provided by the vessel owner from Brewer Yacht Yard reflects that substantial water had enter the M/V Spray before the salvor's arrival. It is the panel's conclusion that the salvor sustained no losses during its work, and that its efforts prevented substantial additional damages to the M/V Spray and potential environmental damage, which would have arisen from pollution had the vessel sunk.

It appears that the M/V Safe/Sea Salvor and related equipment of HRM were ready, promptly arrived on the scene, and were efficient in dewatering the M/V Spray. As a professional salvor, the panel concludes that HRM would be entitled to an uplift of its salvage work, and that is included in the award herein after made.

In reaching the conclusions herein the panel has taken into consideration the holdings of New Bedford Marine Rescue, Inc. vs. Cape Jeweler's, Inc., 240 F. Supp. 2d 101 (D. Mass. 2003), which appears to be factually very similar to the case before this panel. In that case, a vessel was found sinking at a dock, and a salvor pumped it out. Thereafter it was determined that water was leaking into the vessel through its stuffing box. This appears at least in part to be the cause of the ingress of water involved in this case. In New Bedford Marine Rescue, Inc. vs. Cape Jeweler's, Inc. the court found a salvage award of 18% of the post casualty value to be appropriate. In this case we find 10% to be appropriate.

In this case we find the ingress of water into the M/V Spray, although it was docked in calm waters was a marine peril, and gives rise to the proper basis for a salvage award. As a result of the salvor's efforts having been successful and mitigation of the damages, in this case we find an award of 10% of the post casualty value of the Spray to be appropriate The evidence presented by the vessel's owner, and the salvor, particularly the repair estimate indicate that the water level had risen in the Spray before the salvor's intervention well beyond the level of normal accumulation in the bilge of this vessel. Further if that accumulation had continued, water would have entered through the vessel's scuppers, and resulted in rapid flooding, extensive damage to the engines, and the release of both fuel and lube oil into the water, giving rise to a pollution incident.

It is the conclusion of this panel that a sinking of this type, i.e. at the dock in calm weather, is probably the most frequent type of sinking of pleasure vessels in the United States. Although the vessel's owner argues that he had many alternative ways of dealing with this sinking/flooding, the fact remains that he did not exercise any of those alternatives, and chose to rely on the services of HRM which by the clear terms of the salvage's agreement, as well as advices to the vessel's owner by the salvor would be salvage services based upon a percentage of the value of the vessel. The vessel's owner vigorously argues to the contrary, but the irrefutable evidence in an audio recording and transcript of the discussions between the vessel owner and salvor on this point makes it clear that was no overreaching or bad faith on the part of the salvor as asserted by the owner.

It is the conclusion of this panel that the total salvage award against the M/V Spray and David Pickering in favor of HRM is $4,500. In addition, the salvor is entitled to prejudgment interest at one and a half percent per month running from 30 days after conclusion of these salvage and presentation of the salvage

bill. The prejudgment interest should run from November 8th, 2006 through the date upon which this award is satisfy at a per deim amount of $2.22 cents a day this prejudgment interest is payable both based upon the admiralty and maritime law of the United States as well as the salvage contract at issue here.

Paragraph seven of the salvage agreement provides for the recovery of costs incurred in collection of payments under that agreement including reasonable attorneys fees, and thus the panel has concluded that the costs of this arbitration in the total amount of $1,575.00 should be recovered hereunder, and shall be included in this award, payable to Boat Owners Association of The United States. Finally pursuant to the salvage agreement section referred to above, the panel concludes that HRM shall recover attorney's fees and cost in the total amount of $4,636.28, which are also included in this award.[1]

Judgment may be entered on this Award in any court having jurisdiction thereof.

Mr. Dante Mattioni dissents from the positions of Messrs. Keedy and Koster set out above, in the following dissenting statement. Nonetheless the decision of the majority of the panel is as stated above and controls.

Christian D. Keedy (Chair) for the panel.
John C. Koster

| | | | |
|---|---|---|---|
| Nov | 23 | MAY | 31 |
| DEC | 31 | JUNE | 30 |
| JAN | 31 | JULY | 31 |
| FEB | 28 | AUG | 3 |
| MAR | 31 | | |
| APR | 30 | | |

[1] HRM has included a claim for $500.00 for towing, which appears to be a separate issue from the salvage, and not covered by the arbitration agreement. Thus the panel has not considered that claim and it is not included in the award herein, leaving HRM whatever remedies it chooses to pursue, if any, concerning same.

**DISSENTING STATEMENT BY ARBITRATOR**

I respectfully dissent from the award of salvage in this case. To make an award of salvage, the service must have been voluntary and the vessel receiving the service must have been in peril. Thus, if there was no peril, then there should be no award. Here we have at best a situation in which the boat suffered only from minor leakage, and was dewatered in a matter of minutes. The vessel was never in peril or at risk in the true marine salvage sense.

I rely on the *J.C. Pfluger*, where despite serious damage to the vessel which was partially dismasted, the Court found that because there was no peril, the award was limited to towage service and not salvage. *New Bedford Marine Rescue, Inc. v. Cape Jeweler's Inc.*, 240 F. Supp. 2d 101 (D. Mass. 2003) actually supports my opinion because in the case the vessel was sinking at the dock as a result of major ingress of water through its stuffing box. Here, there was at most minor leakage and no threat of severe weather or other marine peril and no threat of the vessel sinking.

In my opinion, because there was no peril, any award should be limited to the reasonable value of the towage service rendered. An appropriate award for such towage service would be in the amount of $2,500.00.

DANTE MATTIONI, ESQUIRE