UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ONEBEACON AMERICA INSURANCE COMPANY

v. C.A. 07-370S

H.R.M., INC. (d/b/a Safe/Sea Marine Rescue & Assistance)

# REPORT AND RECOMMENDATION

Robert W. Lovegreen, United States Magistrate Judge

## Background

In this matter, the plaintiff, OneBeacon America Insurance Company ("OneBeacon"), filed a Complaint to "Vacate & Modify the Final Arbitration Award Issued By the Boat Owners Association of the United States." Subsequently, the defendant, H.R.M., Inc. ("H.R.M.") filed an answer setting forth a counterclaim seeking to confirm and enforce the final arbitration award. These parties then filed cross-motions for summary judgment which were referred to a magistrate judge for preliminary review, findings, and recommended disposition. 28 U.S.C. Sec. 636(b)(1)(B); LR CV 72(a). A hearing was held on March 26, 2008. After examining the memoranda submitted, listening to the arguments of counsel and conducting my own independent research, I recommend that the district court grant OneBeacon's Motion for Summary Judgment to the extent that the Final Award be vacated as to the requirement that OneBeacon pay the sum of $1,575.00 to Boat Owners Association and be modified so that each party bears equally the arbitration fees and expenses to a maximum of $1,575.00 per party. I further recommend that H.R.M.'s motion for summary judgment be denied.

## Statement of Facts

The undisputed facts are as follows:

On September 23, 2006, OneBeacon's insured, David Pickering ("Pickering"), owned a pleasure craft named the M/V Spray ("Spray") docked at Dickerson's Marina[1] in Apponaug, Rhode Island. The Spray is a thirty six (36) foot Formula vessel with two inboard engines and was insured with OneBeacon. Pickering visited the Spray on this date at the marina only to discover that the Spray was riding lower in the water than usual. Upon inspection, Pickering determined that water had entered the Spray's cabin and engine compartment and he decided to seek assistance.

Subsequently, a vessel owned and operated by H.R.M., an entity providing marine towage and salvage services on a continuous basis, appeared on the scene. It was determined that the Spray needed to be dewatered. However, before any services were undertaken by H.R.M., a Rhode Island Standard Form Marine Salvage Contract (the "Salvage Contract") prepared by H.R.M. was submitted to Pickering and he was informed that if not signed by him there would be no services provided by H.R.M. Pickering signed as did H.R.M.'s captain. The Spray was then dewatered, towed and ultimately hauled out of the water[2]. According to the invoice submitted by H.R.M. for its services, its vessel and personnel were occupied for approximately three (3) hours in this effort, including travel time. On or about October 9, 2006, H.R.M. invoiced Pickering a total of $11,000.00 for its services to the Spray. Pickering, in turn, submitted the invoice to OneBeacon and a dispute arose between OneBeacon and H.R.M. over the appropriate amount for the invoice.

The Salvage Contract provides in para. 6 that, in the event of a dispute, "all parties agree to binding arbitration under the The (sic) BOAT/U.S. Salvage Arbitration Plan." In February 2007, the parties submitted this dispute to the Boat Owners Association of the United States Salvage Arbitration Plan ("BOAT/U.S. Arbitration Plan"). In accordance with the terms thereof, each party selected an arbitrator from one of two predetermined lists and the two arbitrators selected the neutral or third arbitrator.

---

[1] The arbitration award refers to this as Apponaug Harbor Marina in Warwick, Rhode Island. The name difference is immaterial to this matter.

[2] It is not clear what role, if any, H.R.M. played in the hauling out effort. However, that is not material to this matter.

The arbitration proceeded and, in late July 2007, the panel issued an award by a majority vote. The arbitration panel awarded H.R.M. (1) a salvage award of $4,500.00, (2) prejudgment interest at the rate of $2.22/day, attorney's fees and costs totaling $4,636.28 and (3) "costs" of this arbitration in the amount of $1,575.00 "payable to Boat Owners Association of The United States."[3] The dissent stated only that the salvage award should be limited to $2,500.00 and made no reference to the award of prejudgment interest, attorney's fees or any costs. In sending the Final Award to Caroline Ajootian ("Ms. Ajootian") who was addressed as "Manager" of the Boat U.S.'s Arbitration Plan[4], the neutral or third arbitrator stated "Statements of the arbitrators for fees and costs will be provided by each arbiter directly to you in due course."[5]

Unfortunately, the dispute between these parties did not end here. OneBeacon took the position that the arbitration award, insofar as it required OneBeacon to pay "costs" of the arbitration totaling $1,575.00 to Boat Owners Association of The United States, exceeded the authority granted to the arbitrators under the BOAT/U.S. Arbitration Plan. OneBeacon then contacted the Arbitration Administrator at BOAT U.S. to reiterate its concern about this portion of the Final Award. The Arbitration Administrator e-mailed the majority arbitrators seeking clarification concerning the award of $1,575.00 to the Boat Owners Association of the United States. The Arbitration Administrator inquired as to whether the award required OneBeacon to pay H.R.M.'s arbitration costs and whether the award of the arbitration costs was in addition to the costs and attorney's fees of $4,636.28. Interestingly, the Arbitration Administrator defined the arbitration costs as "up to $1,575.00, to be determined when the arbitrators submit their invoices ...."[6] On

---

[3] Final Arbitration Award at p. 4 (attached to OneBeacon's motion for summary judgment).

[4] Ms. Ajootian is sometimes addressed as "Manager" or "Director, Consumer Affairs" and the Boat/U.S. Arbitration Plan refers to the "Arbitration Administrator" which role Ms. Ajootian appears to fill. I shall refer to Ms. Ajootian as the Arbitration Administrator.

[5] See letter dated July 23, 2007 from C. Keedy to Caroline Ajootian (attached to OneBeacon's motion for summary judgment).

[6] See e-mail dated July 25, 2007 from Caroline Ajootian to C. Keedy (attached to OneBeacon's motion for summary judgment).

that same day, the third or neutral arbitrator responded "It is $1,575.00 regardless of what the bills total when sent to BoatUS."[7] H.R.M.'s arbitrator had also received the e-mail from Ms. Ajootian and he responded that the intent of the arbitration award was that H.R.M. would recover "1. The awarded amount 2. Interest on that amount 3. Its arbitration panel fee costs, and 4. Its legal fees as indicated."[8]

Still unsatisfied, in late July 2007, OneBeacon sent a check to H.R.M. in the sum of $9,733.46 covering the uncontested portion of the Final Award. It failed to pay H.R.M.'s portion of the arbitration fees. In early August 2007, H.R.M. rejected this payment by marking the tendered check "Refused" and returning it to OneBeacon. On July 30, 2007, the Arbitration Administrator wrote a letter to the neutral or third arbitrator inquiring "as to how or under what authority the Panel majority decided to award the cost of arbitration." [9] In that same correspondence, she stated "the Boat U.S. Salvage Arbitration Plan is structured so that each party shares equally in the cost of arbitration, for a maximum per-party cost of $1,575." Later, on August 6, 2007, the Arbitration Administrator corresponded with counsel for these parties advising them to ignore her correspondence of July 30, 2007 to C. Keedy as her reaction to the portion of the Final Award requiring payment by OneBeacon of H.R.M.'s arbitration fees was "over-hasty" and that "it is not within the scope of my office to question or control the Panel's decision." She then stated that any contest as to the Final Award should be "explored, if necessary, through legal channels."[10]

In early October 2007, exploration commenced and this complaint was filed seeking to vacate and modify a portion of the final arbitration award issued by the Boat Owners Association of the United States. H.R.M. timely answered and asserted two counterclaims: (1) confirmation and enforcement of the Final

---

[7] See e-mail dated July 25, 2007 from Reedy to Caroline Ajootian (attached to OneBeacon's motion for summary judgement).

[8] See e-mail dated July 25, 2007 from John Koster to Caroline Ajootian(attached to OneBeacon's motion for summary judgment).

[9] See correspondence dated July 30, 2007 from Caroline Ajootian to C. Keedy. Ex. F to the Complaint.

[10] See correspondence dated August 6, 2007 from Caroline Ajootian to counsel of record. Ex. G to the Complaint.

Award and (2) an award of attorneys' fees and costs for this action.

In due course, the parties filed cross-motions for summary judgment. OneBeacon argues that the portion of the Final Award requiring it to pay all arbitration fees including those of H.R.M. exceeds any authority granted to the arbitrators under the Boat/U.S. Arbitration Plan. Additionally, since OneBeacon tendered its check for the full award less the arbitration fees, it should be excused from payment for any interest after the tender. H.R.M. argues that the arbitrators acted within their authority in issuing the award and the award should be confirmed. Additionally, H.R.M. seeks attorneys' fees and costs for this action.

## Summary Judgment Standard

A party shall be entitled to a summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, the court reviews the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1995)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party may not rest upon "conclusory allegations, improbable inferences, [or] unsupported speculation." Id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Moreover,

the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." Id. (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116 (1st Cir. 1993)(citing Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1985)).

## Analysis

### 1. Applicable Law

9 U.S.C. Sec. 10 (the Federal Arbitration Act) provides, *inter alia*, for the process of vacating an arbitration award and the reason(s) therefore. This Section states in pertinent part as follows:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon application of any party to the arbitration -
>
> ....
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Here, the arbitration award was made outside Rhode Island, but the United States Supreme Court has opined that the venue provisions of the Federal Arbitration Act are permissive and a motion to confirm, vacate or modify an arbitration award need not be filed only in the district where the arbitration award was made. Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 120 S.Ct. 1331 (2000). This court has jurisdiction over this matter as H.R.M. is a Rhode Island corporation located in Rhode Island.

"Arbitral awards are nearly impervious to judicial oversight. Accordingly, disputes that are committed by contract to the arbitral process almost always are won or lost before the

arbitrator. Successful court challenges are few and far between." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000)(citations omitted). "...all the formulations reflect the idea that a court ought not to vacate an arbitral award 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" Id. at 65 (citations omitted). "In a case in which the arbitrator purports to interpret the language of a collective bargaining agreement, a party who seeks judicial review ordinarily must demonstrate that the award is contrary to the plain language of the CBA and that the arbitrator, heedless of the contract language, preferred instead to write his own prescription for industrial justice. Put another way, a successful challenge to an arbitral award in such circumstances necessitates a showing that the award is '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.'" Id. at 65-66 (citations omitted).

"However, '[a]lthough the arbitrator's authority is broad, it is not unlimited.' It is well-established that '[t]he arbitrator 'may interpret ambiguous language', but he may not, however, 'disregard or modify unambiguous contract provisions.' In other words, '[i]f the arbitrator 'interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority.'" Missouri River Services v. Omaha Tribe of Nebraska, 267 F.3d 848, 855 (8th Cir. 2001)(citations omitted).

The party moving to vacate an award bears the burden of showing that the arbitrators exceeded the scope of their authority. "Judicial review of an arbitration award is among the narrowest known in the law." Me. Cent. R.R. Co. v. Bd. of Maint. of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989). As a general matter, arbitrators have "broad power to fashion remedies on issues the parties have empowered them to resolve." Courier-Citizen Co. v. Boston Electrotypers Union No. 11, International Printing and Graphic Communications Union of North America, 702 F.2d 273, 281 (1st Cir. 1983). Accordingly, "[t]here is a policy placing a heavy burden on those claiming that arbitrators' awards exceed their authority." Raytheon Co. v. Automated Business Systems, Inc., 1988 WL 135432 at *4 (D. Mass. Dec. 6, 1988) citing Willoughby Roofing and Supply v. Kajima International, 598 F. Supp. 353 (N.D. Ala. 1984, aff'd 776 F.2d 269 (11th Cir. 1985). Further, the Supreme Court has specifically instructed that "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded

his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award." United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358 (1960).

2. Relevant documents

It is not disputed that there are two relevant documents governing the arbitration process and the scope of authority of the arbitrators. The first document is the Boat/U.S. Salvage Arbitration Plan. The second document is the Rhode Island Standard Form Marine Salvage Contract which was executed on September 23, 2007 between Pickering and H.R.M.

The **Boat/U.S. Arbitration Plan**[11] provides in pertinent part in Section I. B Costs and Time Involved at p.2:

> The arbitration fees are split equally between the two parties. The maximum cost per party is $1,575.00. There are no travel or hearing costs, or additional legal expenses associated with this plan. Fees are collected at the end of the procedure (no pre-arbitration set up costs).

The **Boat/U.S. Arbitration Plan** also provides in pertinent part in Section III. B. Arbitration Fees and Expenses at p. 6:

> All fees and expenses of the Arbitration Panel and the Arbitration Administrator shall be equally between (sic) the parties to arbitration. The maximum amount any party to this arbitration process would pay is $1,575.00.

This section also establishes the fee schedule and the authority of the Arbitration Administrator to review and pay the arbitrators' direct expenses. Had this section also provided authority to the Arbitration Administrator to determine and assess all arbitration fees and expenses, this litigation would have been unnecessary.

The **Boat/U.S. Arbitration Plan** also provides a Standard

---

[11] See Ex. D to the Complaint.

Yacht Salvage Agreement which would be available for use in any marine salvage operation, but such form is not required under the Boat/U.S. Arbitration Plan. See Section II. E. 1. at p. 5. The Boat/U.S. Arbitration Plan also includes a copy of the Standard Salvage Agreement at the end of the Plan.

The **Rhode Island Standard Form Marine Salvage Contract**[12] provides in Para. 6:

> In the event of any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding arbitration under the The (sic) BOAT/U.S. Salvage Arbitration Plan.

The **Rhode Island Standard Form Marine Salvage Contract** also provides in Para. 7:

> It is understood that services performed hereunder are governed by the Admiralty and Maritime Jurisdiction of the Federal Courts and create a maritime lien against the vessel or its posted security. Salvor's lien shall be preserved until payment. Salvor agrees in lieu of arrest or attachment to accept from the vessel's Underwriter, a Letter of Understanding for an amount equal to one and one-half (1.5) times the presented billing with a copy of the insurance policy and coverage information. If the vessel is uninsured or its Underwriter cannot provide a Letter of Understanding, Salvor may demand the posting of a Surety bond with its designated Escrow Agent in an amount equal to 1.5 times the Salvor's bill. Salvor may satisfy collection of fees or charges hereunder by recourse to any security posted and shall also be entitled to any costs incurred in collection of payments due hereunder including reasonable attorneys' fees.

This court notes that the language in Para. 6 of H.R.M.'s Salvage Contract closely resembles the first sentence of Para. 6 in the Boat/U.S. Arbitration Plan's proposed Standard Form located at the end of the Arbitration Plan. Also, the language in Para. 7 of H.R.M.'s Salvage Contract closely mimics the language in Para. 7 of the proposed Standard Form.

---

[12] See Ex. A to the Complaint.

3. The Parties' Contentions.

OneBeacon contends that the arbitrators exceeded their authority in requiring it to pay the full costs of the arbitration, including H.R.M.'s fees, in the amount of $1,575.00. The Arbitration Plan speaks at least twice to this issue and clearly states that each party is to bear its own arbitration fees up to a maximum of $1,575.00. Therefore, the Final Award should be vacated and modified to eliminate the payment by OneBeacon of all arbitration fees and require each party to pay an equal share of the arbitration fees up to a maximum of $1,575.00. Further, OneBeacon seeks attorneys' fees in this matter as the prevailing party.

H.R.M. contends that OneBeacon has waived any right to seek a vacation or modification of the award of arbitration fees as this issue was not raised by OneBeacon before the arbitration panel. Further, Para. 7 of the Salvage Contract permits the arbitrators to award full arbitration fees against one party. Consequently, H.R.M. is entitled to an Order of confirmation and enforcement of the Final Award. Lastly, H.R.M. seeks attorneys' fees and costs in this matter as the prevailing party.

4. Discussion.

Arbitration Fees

The language of the Boat/U.S. Arbitration Plan as to the payment of the arbitration fees is crystal clear. The arbitration fees are to be paid equally by the parties to the arbitration and such fees may not exceed $1,575.00 per party. These fees do not include travel or hearing costs or additional legal expense associated with the Boat/U.S. Arbitration Plan. In addition, the Boat/U.S. Arbitration Plan establishes the fee schedule including the hourly rate and the maximum time allowed for each arbitrator, the fee of the Arbitration Administrator and that the direct expenses of the arbitrators (as defined in the Plan) are not the responsibility of the parties to the arbitration, but the responsibility of the Arbitration Administrator. And the Arbitration Administrator is empowered to review any other expenses tendered by the arbitrators. Para. 6 of the Salvage Contract also makes crystal clear that the terms and conditions of the Boat/U.S. Arbitration Plan apply to this arbitration.

The issue here is whether Para. 7 of the Salvage Contract modifies the Boat/U.S. Arbitration Plan language as to the arbitration fees. The Final Award refers to Para. 7 of the Salvage Contract, but makes no mention of Para. 6 thereof. The arbitrators concluded that the "costs" mentioned in Para. 7 of the Salvage Contract include the arbitration fees and they required OneBeacon to pay all arbitration costs/fees in the sum of $1,575.00[13]. Para. 7 of the Salvage Contract, in pertinent part, states that the Salvor (here H.R.M.) "shall be entitled to any costs incurred in collection of payments due hereunder including reasonable attorneys' fees." But what does the term "costs" include? The Boat/U.S. Arbitration Plan refers to arbitration fees and expenses. Clearly the $1,575.00 ordered to be paid in the Final Award constitutes arbitration fees and expenses since that is the exact maximum amount set forth twice in the Boat/U.S. Arbitration Plan and, further, the Final Award orders that payment be made not to H.R.M., but to Boat Owners Association of the United States. If these were costs incurred by H.R.M. in this arbitration process, they would be awarded directly to H.R.M. and not to Boat Owners Association of the United States. In addition, the Final Award grants H.R.M. recovery for "attorney's fees and cost (sic) in the total amount of $4,636.28 ...." Since the Final Award specifically granted H.R.M. recovery for its costs incurred during the arbitration process, the award of $1,575.00 to be paid by OneBeacon to Boat Owners Association must, of necessity, be for the arbitration fees. The Final Award violates the specific and clear language of the Boat/U.S. Arbitration Plan which governs this arbitration and which mandates that all arbitration fees are to be shared equally by the parties up to a maximum of $1,575.00 per party. Consequently, the Final Award exceeds the authority of the arbitrators.

I am further troubled by another aspect of the Final Award and that is how the arbitrators determined that the arbitration fees and expenses equaled or exceeded $1,575.00. When the Final Award was sent to the Arbitration Administrator, the cover letter

---

[13] Merely labeling arbitration fees as "costs" does not change their character and does not permit the arbitrators to award them against only one party. After all, you can describe a cat to be a dog, but that descriptive designation does not cause the cat to bark. Peerless Ins. Co. v. Viegas, 667 A.2d 785, 789 (R.I. 1995). The arbitrators' attempt to shoehorn arbitration fees and expenses into "costs" provided for in Para. 7 of the Salvage Contract must fail. That cat will meow, but will not bark.

written by the neutral or third arbitrator stated "Statements of the arbitrators for fees and costs will be provided by each arbiter directly to you in due course."[14] This record contains no evidence as to whether this task was completed and, if so, what that amount totaled. Indeed, in his July 25, 2007 e-mail to the Arbitration Administrator, the neutral or third arbitrator stated "[t]o make it simple. It is $1,575.00 regardless of what the bills total when sent to BoatUS." In this court's opinion, the Final Award violated the applicable language of the Boat/U.S. Arbitration Plan and, therefore, the arbitrators exceeded their authority in ordering payment of the arbitration fees in two respects: (1) the Boat/U.S. Arbitration Plan clearly required the arbitration fees to be split equally between the parties and not be the responsibility of only one party and (2) the maximum amount of the arbitration fees is limited to $1,575.00 per party, yet there was no basis in the record before the arbitrators as to the total amount of the arbitration fees. They may well have been less than $1,575.00, yet the neutral or third arbitrator stated in his July 25,2007 e-mail that the arbitrators did not consider any amount less than the maximum. I find that the arbitrators exceeded the scope of their authority in awarding Boat Owners Association of the United States arbitration fees in the amount of $1,575.00 to be paid by a single party, OneBeacon, and without regard to the actual amount of the arbitration fees which may well have been less than the maximum.

Further, I do not believe that Para. 7 of the Salvage Contract is ambiguous to the extent that it would permit the arbitrators to award arbitration fees against only one party. Although Par. 7 references "the collection of fees or charges", to the extent this is ambiguous, such ambiguity is to be resolved against H.R.M. as the preparer of the Salvage Contract. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63-64, 115 S.Ct. 1212 (1995). I do not find that Para. 7 of the Salvage Contract abrogates the language of Para. 6 thereof which refers to the Boat/U.S. Arbitrations Plan whose clear language as to the payments of arbitration fees and the maximum amount was not followed in this Final Award. However, to the extent that H.R.M. argues that Para. 7 is ambiguous and that the arbitrators could read Para. 7 as granting the authority to award arbitration fees against only one party, Para.7 should be read against H.R.M. as the preparer of the "ambiguous" language.

---

[14] See Ex. C to the complaint.

Waiver

H.R.M. also argues that OneBeacon waived its right to raise this opposition to the Final Award. H.R.M. contends that from the inception of this arbitration, it set forth a "demand" for an award which included the costs of arbitration. This "demand" was included in its Initial Submission and its Rebuttal Submission. H.R.M. contends that in its Initial Submission it stated "The arbitrators' fees in this matter cannot exceed $1,575.00 for each party per the terms of the Salvage Arbitration Plan. H.R.M. seeks an award of its arbitrators' fees up to the maximum amount." H.R.M. further contends that at no time did OneBeacon object to this demand and, therefore, OneBeacon waived any right to contest the award of any arbitration fees to H.R.M.

OneBeacon argues that there was no waiver of the argument that the arbitrators exceeded their authority as to the arbitration fees because, in its initial submission, it argued against any award to H.R.M. which, of necessity, included any award of arbitration fees. Also, when the Final Award was issued, OneBeacon immediately raised the issue of arbitration fees with the Arbitration Administrator.

The parties agree that this matter was submitted to the arbitration panel on the papers. There was no hearing, no testimony and no argument by counsel other than in the papers filed. Consequently, there was no opportunity to bring this issue to the attention of the arbitrators except through the parties' submissions. The supporting cases offered by H.R.M. in support of its waiver argument are inapposite. Those cases involved extensive testimony and legal argument before the arbitration panel and substantial opportunity to address issues directly with the arbitrators. Here, there was no such opportunity. And there was no opportunity to gauge the arbitrators' opinions on the issue of the arbitrators' fees until the Final Award was rendered.

Complaint v. Motion

H.R.M. raises a final argument as to the form of this litigation commenced by OneBeacon. Specifically, H.R.M. argues that the Federal Arbitration Act, Section 6, requires the party seeking to vacate or modify an arbitration award to file a motion rather than a complaint. Therefore, the complaint should be

dismissed with prejudice.

OneBeacon counters by arguing that Fed. R. Civ. P. 3 provides "A civil action is commenced by filing a complaint with the court." Consequently, a complaint is the appropriate vehicle for the relief sought.

The Federal Arbitration Act, Section 6, provides:

> Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

OneBeacon did file a complaint rather than a motion. H.R.M. did file an answer to the complaint although it also stated therein in its First Affirmative Defense:

> Plaintiff's Complaint violates the specific statutory requirements for seeking to vacate or modify an arbitration award as set forth in the Federal Arbitration Act, 9 U.S.C. Section 6, and the Complaint should be dismissed with prejudice.

However, H.R.M. then proceeded to file two counterclaims seeking Confirmation and Enforcement of the Final Award and for attorneys' fees.

> A party seeking vacatur must proceed by motion to the court. .... Rule 81(a)(3) of the Federal Rules of Civil Procedure states, in part: "In proceedings under Title 9, U.S.C., relating to arbitration ... [the Federal Rules of Civil Procedure] apply only to the extent that matters of procedure are not provided for in those statutes." Thus, the language of Section 6 preempts the Federal Rules. The policy behind this section "is to expedite judicial treatment of matters pertaining to arbitration." To this end, "the statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint or an Application [to Vacate Arbitration Award]." A request for vacatur must be made in the form of a motion.

Kruse v. Sands Brothers & Co., Ltd., 226 F.Supp. 2d 484, 485-86 (S.D.N.Y. 2002)(citations omitted).

> A Motion to Vacate an Arbitration Award is required in order to preserve the proper function of arbitration.

> "In order to promote speedier, less costly dispute resolution and encourage arbitration, the FAA and Federal Rules of Civil Procedure do not contemplate full-blown litigation for the purposes of contesting an arbitration award with which a party may disagree.

Id. at 487 (citations omitted).

Thus it would appear that the principal reasons for requiring the filing of a motion versus a complaint is to save time, avoid lengthy and expensive litigation and encourage arbitration. Here, the complaint was timely filed on October 4, 2007. The answer with counterclaims was filed on October 19, 2007. On October 22, 2007, the district court noticed a Rule 16 conference for November 1, 2007 and then continued it to November 15, 2007. On November 1, 2007, OneBeacon responded to the counterclaims. On November 15, 2007, the district court denied OneBeacon's motion to strike H.R.M.'s pleadings and referred the matter for a settlement conference with this magistrate judge. The district court also set quick deadlines for the filing of motions for summary judgment (plaintiff's motion due 1/15/08 and defendant's motion due 2/15/08 with plaintiff's reply due 2/29/08 and defendant's reply due 3/7/08). A settlement conference was held on December 19, 2007 and was unsuccessful. A stipulation of undisputed facts was filed by the parties on January 4, 2008. The parties filed a Consent Order on January 17, 2008 shortening the time for all pleadings as to the summary judgment to February 5, 2008. On February 8, 2008, the cross-motions for summary judgment were referred by the district court to this magistrate judge for a Report and Recommendation. A hearing thereon occurred on March 26, 2008. There was no discovery taken or requested pursuant to the Federal Rules of Civil Procedure. The matter was treated as a motion even though labeled a Complaint and proceeded speedily and inexpensively through the process.

Since this matter was treated as a motion and proceeded in a speedy and inexpensive manner, the dictates stated in Kruse, supra, have been met and arbitration has been and will be encouraged. There has been no protracted litigation. This matter was expedited as though a motion was filed rather than a complaint. Had there been protracted litigation or delay as a result of OneBeacon's actions in this matter, then this court would agree that the complaint may well be subject to dismissal[15]. But the only "violation" of the Federal Arbitration

---

[15] The court, in Kruse, stated that its concern was that proceeding with the complaint "would almost surely result in

Act, Section 6, present here is that the word "Complaint" was used in the initial document rather that the word "Motion". To dismiss this matter with prejudice as H.R.M. requests would not be fair or just under the circumstances of this case. In this court's opinion, dismissal is not warranted here.

Attorneys' Fees and Costs

OneBeacon has requested an award of attorneys' fees in this matter although it concedes in its Memorandum in support of its motion for summary judgment that the Boat/U.S. Arbitration Plan does not expressly provide attorneys' fees to the vessel owner or insurer. Should this Report and Recommendation be accepted by the district court, the issue involved is exceedingly narrow (who pays the arbitration fees) and the amount in controversy is less than $800.00. Generally, attorneys' fees are not available in admiralty cases unless the court determines in its equitable discretion that a party has acted in bad faith. See F.D. Rich Co. v. United States ex. rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165 (1974). I find no evidence in this matter that H.R.M. acted in bad faith and, therefore, I find no reason to award such fees in this matter. Also, OneBeacon has not offered any calculation for the award of counsel fees including the hours spent, the hourly rate, the work performed and the experience of the counsel involved. I do not recommend the award of any attorneys' fees to OneBeacon.

H.R.M.'s request for counsel fees should also be denied for the same reason - I have found no evidence of bad faith on the part of OneBeacon, H.R.M. has not prevailed and like OneBeacon, H.R.M. has offered no calculations supporting any award of attorneys' fees. I do not recommend the award of any attorneys' fees to H.R.M.

Conclusion

---

protracted litigation" and that "[i]f the defending party did not prevail on its motion to dismiss, the proceeding to vacate the arbitration award would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial." Id. at 487. That result was not threatened here and did not materialize.

For the reasons stated, I recommend that the district court grant OneBeacon's Motion for Summary Judgment to the extent that the Final Award be vacated as to the requirement that OneBeacon pay the sum of $1,575.00 to Boat Owners Association and be modified so that each party bear equally the arbitration expenses to a maximum of $1,575.00 per party.

I further recommend that H.R.M.'s motion for summary judgment be denied.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

Robert W. Lovegreen
United States Magistrate Judge
April 30, 2008